O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

SYLVIA GARCIA,                    §
                                  §
          Plaintiff,              §
VS.                               §        CIVIL ACTION NO. 7:13-CV-460
                                  §
CITY OF MCALLEN, *et al*,         §
                                  §
          Defendants.             §

## ORDER AND OPINION

The Court now considers the self-styled "Defendant City of McAllen's Motion to Dismiss,"[1] filed by the City of McAllen ("City"), and the self-styled "McAllen Independent School District's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction,"[2] filed by the McAllen Independent School District ("School"). Sylvia Garcia as next friend of Frederick Matthew Garza ("Plaintiff") has filed a self-styled "Plaintiff's First Amended Complaint,"[3] but has not responded to the motions. After considering the complaint, motions, and relevant authorities, the Court **STRIKES** the City's motion, **GRANTS** the School's motion for claims related to educational malpractice, but **DENIES** the School's motion for claims related to civil rights violations. In addition, because this order resolves all motions on the Court's docket and neither Defendant has yet filed an answer, the Court **CONTINUES** the pretrial and scheduling conference as scheduled for December 17, 2013,[4] **until February 11, 2014.**

---

[1] Dkt. No. 7.
[2] Dkt. No. 12.
[3] Dkt. No. 11.
[4] Dkt. No. 10.

O

## I.      Factual Background

In this complaint, Plaintiff alleges causes of action arising from three separate episodes. In the first episode, she alleges the McAllen Independent School District failed to update her son's annual Individual Educational Plan (IEP) pursuant to the Individual with Disabilities in Education Act (IDEA).[5] This failure deprived her son's teachers of the opportunity to be aware of a doctor's diagnosis given the previous summer.[6] Subsequently, Plaintiff's son was involved in a dispute with a teacher.[7] The School responded by transferring the boy to an inferior school. Despite repeated requests from Plaintiff, the School refused to hold a manifestation hearing prior to the transfer.[8] For this episode, Plaintiff seeks to recover under the 14th Amendment through § 1983, under § 504 of the Rehabilitation Act of 1973, and under the IDEA.[9]

In the second episode, Plaintiff alleges a gym teacher harassed her son until he experienced an anxiety attack, which gave him the appearance of being under the influence of alcoholic or narcotic substances.[10] School officials asked him to submit to a drug test and suspended him for three days upon his refusal. For this episode, Plaintiff seeks to recover under the 4th and 14th Amendments through § 1983.[11]

The details of the third episode remain unclear, but Plaintiff alleges that her son approached a school counselor, who called the City of McAllen Police.[12] The McAllen Police summarily arrested her son and sought to have him committed to a Mental Health and Mental Retardation Center (MHMR). Plaintiff alleges the school counselor instigated this arrest in

---

[5] Dkt. No. 11 at p. 3, ¶9; pp. 6-7, ¶¶29, 33; p. 10, ¶56.
[6] *Id.* at p. 10, ¶59.
[7] *Id.* at p. 6, ¶32.
[8] *Id.* at pp. 7-8, ¶¶39, 44; pp. 9-10, ¶54.
[9] *Id.* at pp. 12-17.
[10] *Id.* at pp. 11-12, ¶¶65-67.
[11] *Id.* at pp. 17-19.
[12] *Id.* at p. 12, ¶¶ 68-71.

O

retaliation for the lawsuit now before the Court. For this episode, Plaintiff seeks to recover under the 4th and 14th Amendments through § 1983.[13]

## II.      Standards for the Motions to Dismiss

The Fifth Circuit has interpreted the IDEA's exhaustion requirement as jurisdictional in nature.[14] As a result, claims subject to the IDEA's exhaustion requirement must be dismissed for the due process hearing before this Court may hear them.

Pursuant to Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[15] The Court construes pleadings from a *pro se* party liberally,[16] but "[t]he plaintiffs, as the parties asserting federal subject-matter jurisdiction, bear the burden of proving that its requirements are met."[17]

"The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears

---

[13] *Id.* at pp. 19-20.
[14] *See* discussion in Hooker v. Dallas Indep. Sch. Dist., 3:09-CV-1289-D, 2010 WL 4025877 (N.D. Tex. Oct. 13, 2010). *See also* Gardner v. Sch. Bd. Caddo Parish, 958 F.2d 108, 112 (5th Cir.1992) ("[A] complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies[.]"); Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir.2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction.").
[15] St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency, 556 F.3d 307, 315 (5th Cir. 2009).
[16] See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980) (per curiam); SEC v. AMX, Int'l, Inc., 7 F.3d 71, 75 (5th Cir.1993) (per curiam).
[17] Willoughby v. U.S. ex rel. U.S. Dep't of the Army, 730 F.3d 476, 479 (5th Cir. 2013).

O

certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[18]

### III.    The Amended Complaint and the City's Motion to Dismiss

Federal Rule of Civil Procedure 15(a)(1)(B) provides that a party may amend, as a matter of course, a pleading to which a response is required (such as a complaint) within 21 days after service of a motion under rule 12(b). The City of McAllen filed a motion to dismiss on October 22, 2013,[19] and Plaintiff filed her Amended Complaint on November 8, 2013.[20] Because she filed her Amended Complaint only 17 days later, the Court adopts it as the live pleading.

The City's motion to dismiss pointed out, albeit unsupported with legal analysis, that Plaintiff's first pleading alleged no cause of action against a City employee, since the School comprises a separate entity from the City. Plaintiff's Amended Complaint alleges that McAllen Police unlawfully arrested Plaintiff's son and sought to commit him involuntarily to a mental health center, violating the 4th and 14th Amendments via § 1983.[21] Because the City's motion to dismiss does not respond to the allegations in the Amended Complaint, the Court **STRIKES** it as moot.

### IV.    The IDEA, § 504, and § 1983

To facilitate the Court's later analysis of the School's motion to dismiss, the Court will now give a basic explanation of the rights and responsibilities Congress created in three overlapping statutes.

---

[18] Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).
[19] Dkt. No. 7.
[20] Dkt. No. 11.
[21] Dkt. No. 11 at pp. 19-20.

O

*The IDEA*

Through the Individual Education Plan, the IDEA sets the student on a personalized disciplinary and educational course which aims to work sensitively with the student's disability and minimize disruptions to the student's and others' progress.[22] The IEP must be updated annually.[23] In recognition of parents' rights and of parents' signal importance in the development of the child, parents must be fully incorporated into the IEP team.[24] Parents have certain procedural safeguards, which include access to all relevant records concerning evaluation and placement of their children,[25] and receipt of prior written notice when a school proposes or refuses to alter a placement.[26] Before a student may be transferred or expelled, the IDEA Section 300.530(e) mandates a "manifestation hearing":

> "Within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct, the LEA [Local Education Agency], the parent, and relevant members of the child's IEP Team (as determined by the parent and the LEA) must review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine--
> (i) If the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or
> (ii) If the conduct in question was the direct result of the LEA's failure to implement the IEP."

The purpose of this review is to ensure the student is not punished for behavior resulting from a manifestation of a disability, or for the administration's failure to implement the IEP. Before this manifestation hearing has occurred, the student cannot be moved.

---

[22] 20 U.S.C.A. § 1414 (d) ("The term 'individualized education program' or 'IEP' means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section . . . .").

[23] 20 U.S.C.A. § 1414 (d)(1)(A)(ii) (mandating the IEP include "a statement of measurable annual goals, including academic and functional goals"); 20 U.S.C.A. § 1414 (d)(2)(A) ("At the beginning of each school year, each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program, as defined in paragraph (1)(A)."); 20 U.S.C.A. § 1414 (d)(3)(A) ("The local educational agency shall ensure that . . . the IEP Team . . . reviews the child's IEP periodically, but not less frequently than annually . . . .").

[24] 20 U.S.C.A. § 1414 (d)(1)(B).

[25] 20 U.S.C. § 1415(b)(1)(A).

[26] § 1415(b)(1)(C).

O

"(j) Maintenance of current educational placement

Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed."[27]

This, as Plaintiff mentions, is commonly referred to as the Stay Put provision. If the parent requests a due process hearing, the student must remain in place until that hearing has concluded as well. "A request for a due process hearing (due process complaint) must be in writing and must be filed with the Texas Education Agency, 1701 N. Congress Avenue, Austin, Texas 78701."[28]

Substantive and procedural violations of the IDEA cannot be brought in Federal court until the parent has first completed the due process hearing. "The obligation to exhaust the administrative process before filing a suit in federal court arises from the IDEA itself. One section contains a lengthy set of procedural guidelines for the due process hearing. 20 U.S.C. § 1415(f). Texas does not provide for further review within the state administrative process. 19 Tex. Admin. Code § 89.1151(b). Thus, once a party is 'aggrieved by the findings and decision made' by the hearing officer, it has the right to bring suit in district court. 20 U.S.C. § 1415(i)(2)(A)."[29]

The exhaustion requirement has only one exception: if pursuing the due process hearing would be futile, the parent need not do so.[30] "To show futility, a plaintiff must demonstrate that

---

[27] 20 U.S.C.A. § 1415 (j).
[28] 19 Tex. Admin. Code § 89.1165.
[29] M.L. v. Frisco Indep. Sch. Dist., 451 F. App'x 424, 426 (5th Cir. 2011).
[30] Honig v. Doe, 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) ("It is true that judicial review is normally not available under [the IDEA] until all administrative proceedings are completed, but as [the Supreme Court] previously [has] noted, parents may bypass the administrative process where exhaustion would be futile or inadequate.").

O

adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."[31]

*Section 504 of the Rehabilitation Act of 1973*

Section 504 independently protects students with disabilities in any institution which receives federal funds.[32] Pedagogical and administrative requirements for the IDEA and § 504 resemble each other, but differ. The "§ 504 Plan" is shorter than the IEP, though the IEP may be used as a § 504 Plan. While the IDEA covers students only during educational activities, § 504 covers students during extracurricular activities. The Office for Civil Rights may react to violations of **§ 504** by terminating federal funds to the institution in violation, or by requesting the Department of Justice to initiate judicial proceedings.[33]

"It is established that . . . § 504 of the Rehabilitation Act [is] enforceable through an implied private right of action."[34] However, the Fifth Circuit has warned that § 504 does not create general tort liability for educational malpractice.[35] "[A] cause of action is stated under Section 504 when it is alleged that a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program."[36] Thus, an allegation of intentional discrimination on the basis of a disability is necessary to support a cause of action under § 504,[37] and "facts creating an inference of

---

[31] M.L. v. Frisco Indep. Sch. Dist., 451 F. App'x 424, 428 (5th Cir. 2011). *See also* A.O. v. El Paso Indep. Sch. Dist., 368 F. App'x 539 (5th Cir. 2010) (finding that the hearing officer's effective denial of a hearing showed impossibility).

[32] In her questions to the principal, Plaintiff appears to assume that her son must be covered under either § 502 or § 504. Section 502 provides that public buildings must be accessible to the disabled. Section 504 provides for civil and educational rights. The two complement each other. The current circumstances do not implicate Section 502. Admittedly, the principal's ignorance of the content of the law is not an encouraging sign.

[33] *See* "Interrelationship of IDEA and Section 504," *available at:*
http://www2.ed.gov/about/offices/list/ocr/504faq.html#interrelationship.

[34] Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011).

[35] *Frame* at 223.

[36] Marvin H. v. Austin Indep. Sch. Dist., 714 F.2d 1348, 1356 (5th Cir. 1983).

[37] *See* Hainze v. Richards, 207 F.3d 795, 799 (5th Cir.2000) ("Jurisprudence interpreting either [Title II of the Americans with Disabilities Act or § 504] is applicable to both."); Delano–Pyle v. Victoria Cnty., 302 F.3d 567, 575

professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under Section 504 or ADA against a school district predicated on a disagreement over compliance with IDEA."[38]

However, where § 504 overlaps with IDEA and the wrongs may be redressed through the IDEA, the IDEA hearing must be exhausted before action can be brought on the § 504 claims.[39] "[T]he resolution of an IDEA claim in the school district's favor will frequently preclude parents' resort to redundant claims under § 504 and ADA."[40]

*§ 1983*

Just as § 504 independently protects students, but usually is subject to the IDEA's exhaustion requirements, Plaintiff cannot repackage IDEA claims as § 1983 claims.[41] Where Congress has created a detailed administrative remedy, the more general § 1983 remedy is not available until the administrative process is exhausted or shown futile. However, the mere fact that a statutory violation occurred within a school does not show that it was "related to the way that a school provides education." [42] If not related to the student's education, the violation is a civil wrong like any other. Unless Plaintiff could show no set of facts which would support a § 1983 claim, the Court will not dismiss her claims under Rule 12(b)(1).

---

(5th Cir. 2002) ("[I]n order to receive compensatory damages for violations of the Acts, a plaintiff must show intentional discrimination.").

[38] D.A. ex rel. Latasha A. v. Houston Independent School Dist., 629 F.3d 450, 455 (5th Cir. 2010).

[39] 20 U.S.C.A. § 1415 (l).

[40] D.A. ex rel. Latasha A. v. Houston Independent School Dist., 629 F.3d 450, 454 (5th Cir. 2010).

[41] *See* Marc V. v. N. E. Indep. Sch. Dist., 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006), aff'd sub nom. Marc V ex rel. Eugene V v. N. E. Indep. Sch. Dist., 242 F. App'x 271 (5th Cir. 2007) ("The IDEA bars Plaintiffs from circumventing the IDEA's administrative exhaustion requirement by taking claims that could have been brought under the IDEA and repackaging them as claims under some other statute.").

[42] *See* S.S. v. E. Kentucky Univ., 125 Fed. App'x. 644 (6th Cir. 2005) (collecting cases) (distinguishing complaints about "the general disciplinary practices of a school," which fall under the IDEA, from "allegations of physical assault or sexual abuse of a student by a school staff member or administrator [which] fall outside of the scope of the IDEA since they are not related to the way that a school provides education").

## V.       The IDEA Exhaustion Requirement and Plaintiff's Claims

The School's motion to dismiss challenges the Court's jurisdiction over this action. As noted above, if the claims are brought pursuant to the IDEA, or could have been, then the claims become subject to the IDEA's exhaustion requirement. They must then go to a due process hearing before they may be brought in Federal court.

*Failure to Create and Administrate an IEP*

Plaintiff first alleges that the School failed to create an IEP for the 2012-2013 school year.[43] As the School points out, violations of the IDEA and § 504 such as these must first go to the due process hearing outlined above. Until these remedies have been exhausted, this Court lacks jurisdiction over these claims.

*Failure to Maintain Student Placement Pending Manifestation Hearing*

Plaintiff next alleges that the School refused to follow the IDEA's resolution process.[44] Plaintiff requested a "due process hearing," with the opportunity to present evidence and examine and cross-examine witnesses.[45] The full-blown due process hearing comes after the manifestation hearing and must be requested in writing to the relevant State agency, not requested orally through the School principal. However, a manifestation hearing would have satisfied Plaintiff's request to meet in person, her request to examine the results of the investigation, and her queries about whether her son's IEP had been updated.[46] Despite Plaintiff's repeated requests and accurate recitation of the law, the School refused to provide a

---

[43] Dkt. No. 11 at pp. 12-16.
[44] *Id.* at pp. 16-17.
[45] *Id.* at p. 7, ¶34.
[46] *Id.*, ¶¶33-35.

O

manifestation hearing until her son had already been transferred, citing School policy.[47] The IDEA does not allow such an exception.

The Fifth Circuit has ruled that "failures to meet the Act's procedural requirements are 'adequate grounds by themselves' for holding that the school failed to provide a free appropriate public education, as mandated by the Act."[48] According to Plaintiff's recitation of facts, this procedural deficiency both "result[ed] in the loss of an educational opportunity [and] infringe[d] parents' opportunity to participate in the IEP process."[49] Indeed, the Court's extensive review of Fifth Circuit and national case law has failed to discover a single instance where the local educational agency failed to update the IEP, failed to administer the IEP, failed to include the parent in the IEP Team, and refused to hold a manifestation hearing.

Nevertheless, the due process officer has the power to address both the substantive failures to create and to administer an IEP, as well as the procedural failures to include the parent in the IEP Team and to provide a manifestation hearing prior to transfer. Plaintiff interacted here with the highest level she could readily reach, the principal of the School, who told her the School administration guided his actions. But Plaintiff did not contact the State educational board, and thus "failed to exhaust all the IDEA's administrative remedies."[50] Even though Plaintiff asks for monetary damages available under § 504 but not the IDEA,[51] allowing suit on the same facts in two different forums would create redundancy, and would not effectuate the

---

[47] *Id.* at pp. 7-8, ¶39.
[48] Jackson v. Franklin Cnty. Sch. Bd., 806 F.2d 623, 629 (5th Cir. 1986). The EHA provision to which the Fifth Circuit referred here has survived in the IDEA.
[49] Klein Indep. Sch. Dist. v. Hovem, 690 F.3d 390, 398 (5th Cir. 2012) (internal citations omitted).
[50] Papania-Jones v. Dupree, 275 F. App'x 301, 304 (5th Cir. 2008).
[51] For a comprehensive review of monetary damages available under the IDEA, *see* Perry A. Zirkel, *The Remedial Authority of Hearing and Review Officers under the Individuals with Disabilities Education Act: An Update*, 31 J. Nat'l Ass'n Admin. L. Judiciary (2011), *available at:* http://digitalcommons.pepperdine.edu/cgi/viewcontent.cgi?article=1000&context=naalj. *See also* Perry A. Zirkel, *Adjudicative Remedies for Denials of FAPE Under the IDEA*, 33 J. Nat'l Ass'n Admin. L. Judiciary (2013), *available at:* http://digitalcommons.pepperdine.edu/cgi/viewcontent.cgi?article=1547&context=naalj.

O

Fifth Circuit's issue preclusion rule.[52] Should Plaintiff appeal from the due process hearing, this Court will decide what monetary damages are available under § 504. The Court therefore **DISMISSES** claims related to violations of the IDEA and § 504 – in Plaintiff's parlance, Counts 1, 2, and 3 – until Plaintiff has exhausted the IDEA due process hearing.

*Suspension for Refusal to Take a Drug Test*

Plaintiff's allegation that her son was suspended for refusal to take a drug test does not rest, on its face, on violations of the IDEA. Rather, Plaintiff claims the Fourth and Fourteenth Amendments directly protect her son. As Judge Montalvo has commented in *Tristan v. Socorro*, "Courts have struggled to determine when claims not brought under the IDEA require exhaustion."[53] As in *Tristan*, Plaintiff seeks more than the IDEA's prospective remedies: she seeks reimbursement for emotional and mental distress and for medical expenses.[54] Yet unlike that case, the alleged violation occurred as a result of a teacher confrontation for failure to prepare for a test, and the School used the common disciplinary tactic of suspension followed by a "disciplinary educational setting for an extra week."[55] Further, the alleged "harassment" from the gym teacher here looks nothing like the manufactured allegations of sexual abuse in *Morris v. Dearborne*, and the disciplinary retaliation looks nothing like the assault by a teacher in *Tristan*. Because Plaintiff alleges harm to her son's education as well as violations of his constitutional rights, her claim could have been brought under the IDEA. Count 4, in her parlance, is subject to the IDEA exhaustion requirement, and therefore **DISMISSED**.

---

[52] *See also* Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo., 233 F.3d 1268, 1274 (10th Cir. 2000) ("Thus, our primary concern in determining whether a plaintiff must utilize the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself . . . the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required.").
[53] Tristan v. Socorro Indep. Sch. Dist., 902 F. Supp. 2d 870, 877 (W.D. Tex. 2012).
[54] Dkt. No. 11 at p. 19, ¶¶ 118-9.
[55] Dkt. No. 11 at p. 18, ¶114.

O

*Unlawful Arrest Following Visit to Guidance Counselor*

The analysis here closely follows that above, but concludes the opposite.  The Court notes that whatever unknown events led to the alleged telephone call to the McAllen Police did not occur in a classroom. The arrest was not instigated by an educational disagreement or shortcoming. Arrest is not a method of educational discipline. None of the damages Plaintiff alleges are available under the IDEA, nor does the hearing officer possess the power to award them. Therefore, this alleged violation of the 4th and 14th Amendments is properly brought under § 1983. The Court declines to dismiss Count 5, Plaintiff's § 1983 claims predicated on her son's unlawful arrest following his visit to the guidance counselor.

## VI.    Holding

For the forgoing reasons, the Court **STRIKES** the City's motion to dismiss, **GRANTS** the School's motion to dismiss for Counts 1-4, but **DENIES** the School's motion to dismiss for Count 5. The Court warns Plaintiff that she may not bring § 1983 claims on behalf of her son; she must hire a lawyer for her son.[56] Because Plaintiff will need some time to hire an attorney, this order resolves all motions on the Court's docket, and neither Defendant has yet filed an answer, the Court **CONTINUES** the pretrial and scheduling conference as scheduled for December 17, 2013,[57] until **February 11, 2014**. Plaintiff must obtain counsel prior to that date. Failure to do so will result in dismissal. The Court further orders the parties to file an updated Joint Discovery and Case Management Plan at least 10 days prior to that date.

---

[56] *See* Judge Atlas' thorough reasoning in K.F. ex rel. Ruffin v. Houston Indep. Sch. Dist., CIV.A. H-06-1306, 2006 WL 2434478 (S.D. Tex. Aug. 22, 2006) (citing Harris v. Apfel, 209 F.3d 413, 415 (5th Cir.2000) ("non-attorney parent cannot appear pro se on behalf of a minor child.")).

[57] Dkt. No. 10.

O

IT IS SO ORDERED.

DONE this 16th day of December, 2013, in McAllen, Texas.

 

 

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE